UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

NEW YORK CITY DISTRICT COUNCIL OF
CARPENTERS PENSION FUND, *et al.*,

                      Plaintiffs,

     -against-

STAR INTERCOM & CONSTRUCTION, INC.,

                      Defendant.

11 Civ. 03015 (RJH)

**MEMORANDUM OPINION
AND ORDER**

---

RICHARD J. HOLWELL, District Judge:

     On May 3, 2011, the plaintiffs—four benefit funds (the "Funds") under the auspices of the District Council of New York City and Vicinity of the United Brotherhood of Carpenters and Joiners of America (the "Council"), by and through their trustees—commenced this action by filing a complaint seeking confirmation of a default arbitration award against Star Intercom & Construction, Inc. ("Star," or the "Employer"). The plaintiffs subsequently filed an amended complaint on June 3, 2011, effecting service of the amended summons and amended complaint on the defendant on July 14, 2011. The defendant did not answer the amended complaint or otherwise move with respect to the petition, and on September 13, 2011, the plaintiffs moved before the Court for the entry of a default judgment confirming the arbitration award.

     The Court has examined the record on which the arbitration award was based, and, for the reasons stated herein, GRANTS the petition to confirm the arbitration award, and further GRANTS the plaintiffs' request for reasonable attorneys' fees and costs.

—1—

# I. BACKGROUND

The parties' dispute stems from a construction project at P.S. 175 in Queens, New York governed by a collective-bargaining agreement—the Project Labor Agreement (the "PLA")—between the Council and its affiliated local unions and members, and the New York City School Construction Authority (the "Authority"). The PLA, signed by representatives of the Council and the Authority on November 10, 2004, sets forth conditions of employment for rehabilitation and renovation work at various New York City public schools to be performed pursuant to a previously agreed-upon public-works contract (the "Contract") won by the Council and its affiliated unions. *See generally* PLA, Exh. A to the Declaration of Charles R. Virginia in Support of Plaintiffs' Motion for Default Judgment ("Virginia Decl."), ECF No. 8-1. By its terms, the PLA binds both the Council-affiliated unions and the contractors and sub-contractors performing work for the Authority under the Contract. *See* PLA, art. 1 § 1, art. 2 §§ 1, 3.

Star, a New York corporation and the defendant in this action, entered into a sub-contractor agreement on August 20, 2009, committing itself to the terms of the Agreement. *See* Sub-Contractor Affidavit of PLA, Exh. A to Virginia Decl., ECF No. 8-1. The PLA states that contractors performing work under the Contract "agree[] to be bound by the written terms of the legally-established jointly trusteed Trust Agreements specifying the detailed basis on which payments are to be paid into, and benefits paid out of, [certain] Trust Funds" with regard to work and employees covered under the PLA.[1] *See* PLA, art. 11 § 2.B. The incorporated Trust Agreements require that contractors make certain payments to the Trust Funds on behalf of unionized employees; further, the Trust

---

[1] The plaintiff Funds are trust funds covered by the PLA. *See* Default Arbitration Award at 2, Exh. B to Virginia Decl., ECF No. 8-2.

Agreements authorize the Trust Funds to conduct audits of employers' books and records in order to verify that all required contributions were properly made.[2]  *See* Default Arbitration Award at 4, Exh. B to Virginia Decl., ECF No. 8-2; *see also* Amended Complaint ¶ 11, ECF No. 3.  In addition, the PLA sets out a grievance procedure governing disputes under the PLA, which procedure culminates in a mandatory arbitration hearing conducted under the local arbitration rules of the American Arbitration Association before an impartial arbitrator.  *See* PLA art. 9, § 1.

According to the plaintiffs, "[a] dispute arose during the period of the [PLA] between the parties when the Employer failed to comply with the [plaintiff] Funds' demands to furnish its books and records for the purpose of conducting an audit." Amended Complaint ¶ 12.  Pursuant to the PLA's grievance procedure and arbitration clause, the Funds submitted the dispute to arbitration before the designated impartial arbitrator, Robert Herzog, by filing a November 30, 2010 Notice of Intention to Arbitrate. *See* Default Arbitration Award at 2.  The arbitrator determined that Star was properly served with the Funds' notice, and on January 14, 2011, a hearing was held at which only a representative for the Funds, and no representative of Star, appeared.  *Id.* at 2–3.  As a result, the arbitrator conducted the arbitration as a "Default Hearing." *Id.* at 3.

On February 7, 2011, Arbitrator Herzog issued a written award determining that the Funds had "uncontroverted[ly]" established that: (1) Star was bound by the terms of the Trust Agreements governing the Funds; (2) by the terms of both the PLA and the Trust Agreements, Star was required to make contributions to the Funds on behalf of unionized employees performing work for Star under the Contract; (3) the Trust

---

[2]  The record before the Court does not include the Trust Agreements referenced in the plaintiffs' amended complaint or moving papers, nor is it attached to the arbitration record provided to the Court.

Agreements authorized the Funds to conduct an audit of Star's records in order to ensure compliance with the Trust Agreements' terms; and (4) Star violated the terms of the auditing provisions of the Trust Agreements by failing to consent to an audit of its books. *Id.* at 3–4.  The arbitrator therefore issued a default arbitration award ordering Star "to permit and facilitate the Funds conducting an audit of its books and records for the period of August 31, 2009 through to date to determine whether it is in compliance with its obligations to contribute to the Funds" and requiring Start to pay the Funds' attorneys' fees, the arbitrator's fee, and arbitration costs.  *Id.* at 4–5.  The arbitrator calculated those fees and costs to be $2,350.00, with interest to accrue at a rate of 5.25% from the date of the arbitration award.  *Id.* at 5.

When Star failed to abide by the arbitrator's award, the Funds filed a complaint in the District Court for the Southern District of New York seeking judicial confirmation of the arbitration award's injunctive and financial components, attorneys' fees and costs associated with the federal-court action, and such other and further relief deemed proper by the Court.  The Funds filed an amended complaint on June 3, 2011, and filed the instant motion for the entry of a default judgment confirming the arbitration award on September 13, 2011.  Star has failed to appear in this action or otherwise oppose the plaintiffs' motion.

## II. DISCUSSION

A. <u>Jurisdiction</u>

"It is a fundamental precept that federal courts are courts of limited jurisdiction" and lack the power to disregard such limits as have been imposed by the Constitution or Congress.  *Owen Equip.& Erection Co. v. Kroger*, 437 U.S. 365, 374 (1978).  If subject-

matter jurisdiction is lacking and no party has called the matter to the court's attention, the court has the duty to dismiss the action *sua sponte*. *See Durant, Nichols, Houston, Hodgson & Cortese-Costa P.C. v. Dupont*, 565 F.3d 56, 62 (2d Cir. 2009).

Although the Federal Arbitration Act provides the substantive law for the confirmation of arbitration awards, *see* 9 U.S.C. § 9, "that Act in fact does not independently confer subject matter jurisdiction on the federal courts." *Durant*, 565 F.3d at 63. Therefore, "[t]here must be an independent basis of jurisdiction before a district court may entertain petitions under the Act." *Harry Hoffman Printing, Inc. v. Graphic Commc'ns, Int'l Union, Local 261*, 912 F.2d 608, 611 (2d Cir. 1990).

Here, that independent basis of subject-matter jurisdiction is found in two distinct sources. First, section 301(a) of the Labor Management Relations Act of 1947, 29 U.S.C.§ 185(a), provides in relevant part that "[s]uits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce . . . may be brought in any district court of the United States having jurisdiction of the parties, without respect to the amount in controversy or without regard to the citizenship of the parties." *Id.*; *see Westerbeke Corp. v. Daihatsu Motor Co.*, 304 F.3d 200, 221 (2d Cir. 2002) (explaining that section 301(a) "grant[s] federal courts jurisdiction to enforce arbitration awards issued under collective bargaining agreements"). Second, section 502(e)(1) of the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1132(e)(1), grants "the district courts of the United States . . . exclusive jurisdiction of civil actions under this subchapter brought by the Secretary or by a participant, beneficiary, [or] fiduciary" of retirement plans covered by ERISA. *See also id.* § 1132(f) ("The district courts of the United States shall have

jurisdiction, without respect to the amount in controversy or the citizenship of the parties, to grant the relief provided for in subsection (a) of this section in any action."). Because the plaintiffs to this action qualify as such, *see* Amended Complaint ¶¶ 5–6, ERISA constitutes a separate and independent source of the Court's subject-matter jurisdiction over this action.

Furthermore, personal jurisdiction in this matter is based upon section 502(e)(2) of ERISA, 29 U.S.C. § 1132(e)(2).

    B.   Confirmation of the Arbitration Award

        1.   Default Judgment

Because "[a]rbitration awards are not self-enforcing," *Hoeft v. MVL Grp., Inc.*, 343 F.3d 57, 63 (2d Cir. 2003), *overruled on other grounds by Hall St. Assocs., L.L.C. v. Mattel, Inc.*, 552 U.S. 576 (2008), "they must be given force and effect by being converted to judicial orders by courts," *D.H. Blair & Co., Inc. v. Gottdiener*, 462 F.3d 95, 104 (2d Cir. 2006). The plaintiffs have styled the instant motion as one for a default judgment confirming the underlying arbitration award. However, the Second Circuit has made clear that the default-judgment procedure governed by Rule 55 of the Federal Rules of Civil Procedure "does not operate well in the context of a motion to confirm or vacate an arbitration award." *Id.* at 107. While Rule 55 is meant to apply to situations in which only a complaint has been filed "and the court thus has only allegations and no evidence before it," *id.*, "a motion to confirm or vacate an [arbitration] award is generally accompanied by a record, such as an agreement to arbitrate and the arbitration award decision itself, that may resolve many of the merits or at least command judicial deference," *id.* at 109. Accordingly, because "the judgment the court enters" in such a

situation "should be based on the record," *id.*, "generally a district court should treat an unanswered . . . petition to confirm[ or] vacate as an unopposed motion for summary judgment," *id.* at 110. As a result, the Court treats the plaintiffs' motion as one for summary judgment under Rule 56, rather than one for default judgment under Rule 55.

### 2. Summary Judgment

#### i. Standard

Summary judgment may not be granted unless "the pleadings, the discovery and disclosure of materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party on a Rule 56 motion bears the burden of demonstrating the absence of any such issue of material fact, *see United Transp. Union v. Nat'l R.R. Passenger Corp.*, 588 F.3d 805, 809 (2d Cir. 2009), and "the court must reserve all ambiguities, and draw all inferences, against the moving party," *Sista v. CDC Ixis N. Am., Inc.*, 445 F.3d 161, 169 (2d Cir. 2006). Even where, as here, a non-movant "'chooses the perilous path of failing to submit a response to a summary judgment motion, the district court may not grant the motion without first examining the moving party's submission to determine if it has met its burden of demonstrating that no material issue of fact remains for trial.'" *Vt. Teddy Bear Co. v. 1-800-Beargram Co.*, 373 F.3d 241, 244 (2d Cir. 2004) (quoting *Amaker v. Foley*, 274 F.3d 677, 681 (2d Cir. 2001)).

Absent a statutory basis for modification or vacatur, *see* 9 U.S.C. § 10(a), the Court "must grant" a confirmation of an arbitration award, *id.* § 9; *see Ottley v. Schwartzberg*, 819 F.2d 373, 376 (2d Cir. 1987). "Normally, confirmation of an arbitration award is 'a summary proceeding that merely makes what is already a final

arbitration award a judgment of the court.'" *D.H. Blair*, 462 F.3d at 110 (quoting *Florasynth, Inc. v. Pickholz*, 750 F.2d 171, 176 (2d Cir. 1984)). "Only 'a barely colorable justification for the outcome reached' by the arbitrator[] is necessary to confirm the award." *Id.* (quoting *Landy Michaels Realty Corp. v. Local 32B-32J, Service Emps. Int'l Union*, 954 F.2d 794, 797 (2d Cir. 1992)); *see Barbier v. Shearson Lehman Hutton, Inc.*, 948 F.2d 117, 121 (2d Cir. 1991) (holding that an arbitration award should be confirmed "if a ground for the arbitrator's decision can be inferred from the facts of the case" (internal quotation marks omitted)). Therefore, "the showing to avoid confirmation is very high," and the burden of proof falls on the party opposing confirmation. *D.H. Blair*, 462 F.3d at 110.

    ii. <u>Application</u>

Here, the plaintiffs have met their burden to demonstrate that there is no genuine issue of material fact precluding summary judgment, as the arbitrator's decision provides much more than "a barely colorable justification for the outcome reached," *Landy*, 954 F.3d at 797. In support of his findings and determination, the arbitrator reviewed the PLA and its grievance and arbitration procedures, Star's Sub-Contractor Affidavit, and the incorporated Trust Agreements. Though Star did not participate in the arbitration proceedings, the arbitrator certified that Star was properly served with notice of the arbitration. Based on the evidence presented, the arbitrator determined that the Trust Agreements authorized the Funds to conduct an audit of Star's records in order to ensure compliance with the Trust Agreements' terms, and that Star violated the terms of the auditing provisions of the Trust Agreements by failing to consent to an audit of its books. To be sure, the plaintiffs have not presented this Court with copies of the incorporated

Trust Agreements.  However, there is no reason to doubt the arbitrator's representation or interpretation of the content of those agreements, and, in any event, "[c]ourts are not authorized to review [an] arbitrator's decision on the merits [even in the face of] allegations"—allegations that have not been made in this case—"that the decision rests on factual errors or misinterprets the parties' agreement," *Major League Baseball Players Ass'n v. Garvey*, 532 U.S. 504, 509 (2001).  Nor does the Court have reason to believe that "the arbitrator [has] stray[ed] from interpretation and application of the agreement and effectively dispense[d] his own brand of industrial justice," which is the "only" circumstance in which an arbitrator's "decision may be unenforceable." *Id.* (internal quotation marks omitted); *see* 9 U.S.C. § 10(a).

Moreover, the award of $2,350 for costs incurred in the arbitration, along with interest accruing at 5.25% from the date of the Default Arbitration Award, is reasonable, based on the Court's review of the supporting documentation submitted to the arbitrator.  The Court calculates the amount of yearly interest on an award of $2,350 and at a rate of 5.25% to be $123.375, which yields a daily interest amount of $0.338.[3]  Because 260 days have passed since February 7, 2011, the plaintiffs are entitled to $87.88 in post-award, pre-judgment interest.

Accordingly, the plaintiffs are entitled to an order and judgment enforcing the arbitral award in its entirety for a total of $2,437.88.  *See Hall St.*, 552 U.S. at 582 ("Under the terms of [9 U.S.C.] § 9, a court must confirm an arbitration award unless it is vacated, modified, or corrected as prescribed in §§ 10 and 11." (internal quotation marks omitted)).

---

[3] The plaintiffs do not specify whether they are entitled, per the agreements in this case, to simple or compound interest.  Therefore, the Court makes interest calculations using simple interest.  *See Audiovisual Publishers, Inc. v. Cenco Inc.*, 185 F.3d 93, 97 (2d Cir. 1999).

In addition, the plaintiffs request that the Court order the defendant to pay the plaintiffs' reasonable attorneys' fees and costs incurred in connection with their petition to confirm the arbitration award in court. *See* Virginia Decl. ¶ 26(d). ERISA permits a court to award a benefit plan or its trustees "interest on the unpaid contributions," 29 U.S.C. § 1132(g)(2)(B), as well as "reasonable attorney's fees and costs of the action, to be paid by the defendant," *id.* § 1132(g)(2)(D), if judgment is rendered in favor of the plan. With regard to the Court's calculation of reasonable attorneys' fees, the Second Circuit has stated that "[t]he focus of the district courts is no[t] on calculating a reasonable *fee*, but rather on setting a reasonable hourly rate, taking account of all case-specific variables." *Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of Albany*, 522 F.3d 182, 189 (2d Cir. 2008) (emphasis in original). The Court has reviewed the plaintiffs' counsel's billing records submitted in conjunction with their motion to confirm the arbitration award, *see* Invoice for Professional Services, Exhs. G & H to Virginia Decl., ECF No. 8-7 & 8-8, and has determined that such fees and costs in the amount of $2,164.75 are reasonable.

### III. CONCLUSION

For the reasons stated above, the plaintiffs' petition to confirm the arbitration award is GRANTED in its entirety. The plaintiffs are directed to submit a proposed final judgment conforming to the dictates of this Order by November 8, 2011. The Clerk of the Court is directed to close this motion and close this case.

SO ORDERED.

Dated: New York, New York
       October 24, 2011

                                                Richard J. Holwell
                                                United States District Judge